IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DOUGLAS WEAKLEY,      )
    Plaintiff,      )
           )
      v.        )      Civil Action No.  3:14CV785 (REP-RCY)
           )
HOMELAND SECURITY SOLUTIONS,      )
INC,      )
    Defendant.      )
           )

## REPORT AND RECOMMENDATION

Douglas Weakley ("Plaintiff" or "Mr. Weakley"), proceeding *pro se* and *in forma pauperis*, brings this suit against Homeland Security Solutions, Inc. ("Defendant" or "HSSI"), alleging violations of the Americans with Disabilities Act ("ADA") and the Virginia Human Rights Act ("VHRA"). Following the filing of his Original Complaint (ECF No. 3), Plaintiff filed a document styled "Plaintiff's Request to Amend Supplement" (Pl.'s Request to Amend Supplement, ("Pl.'s Request to Amend"), ECF No. 12) in which he moved to drop his VHRA claim and to raise a new claim under § 510 of the Employee Retirement Income Security Act ("ERISA").

Between Plaintiff's Original Complaint and his Request to Amend, the Court construes the universe of Plaintiff's claims to be: (1) that Defendant unlawfully terminated Plaintiff's employment due to his disability in violation of the ADA; (2) that Defendant retaliated against Plaintiff for engaging in ADA-protected activity; (3) that Defendant unlawfully terminated Plaintiff's employment due to his disability in violation of the VHRA; and, (4) that Defendant unlawfully canceled Plaintiff's health insurance benefits prior to his termination in violation of ERISA. Defendant responds" (1) that Plaintiff's ADA unlawful termination claim is untimely;

1

(2) that Plaintiff's ADA retaliation claim is untimely; (3) that the VHRA does not apply to Defendant; and, (4) that Plaintiff's ERISA claim is untimely.

This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendant's Motion to Dismiss (ECF No. 6), Plaintiff's Request to Amend Supplement (ECF No. 12), Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18), and Defendant's Motion to Strike "Plaintiff's Response to Defendant's Reply Brief in Support of its Motion to Dismiss: Dated Feb 16, 2015 and Conclusion to Purtanant [sic] Facts of Case" (ECF No. 29). For the reasons set forth below, the Court RECOMMENDS that Defendant's Motion to Dismiss (ECF No. 6) be DENIED AS MOOT; Plaintiff's Request to Amend Supplement (ECF No. 12) be GRANTED; Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18) be GRANTED; and, Defendant's Motion to Strike (ECF No. 29) be GRANTED.

## I. BACKGROUND

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency *of a complaint*." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted) (emphasis added). Accordingly, on a motion to dismiss, the record includes "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

The Court construes the allegations in the complaint in favor of the non-moving party, as required when resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004)

2

(citations omitted); *see also* Fed. R. Civ. P. 12(b)(6).  Viewing the facts through such a lens, the

Court has concluded that the relevant facts are as follows.

## A.  Facts Alleged in the Original Complaint

In his Original Complaint (ECF No. 3),[1] Plaintiff alleges

> violations of his rights under [the] Americans with Disabilities Act
> of 1990 as well as discriminat[ion] against [him] due to [his]
> disability, [his] need for further surgeries and in retaliation for
> engaging [in] a protected activity, all in violation of the Americans
> with Disabilities Act of 1990, as amended - Section-503, and the
> Virginia Human Rights Act, Va Code 2-2-3900B et seq.

(Compl., ECF No. 3 at 1.)[2]  As noted above, the Court reads these statements as Plaintiff making

the following claims: (1) that Defendant unlawfully terminated Plaintiff's employment due to his

disability in violation of the ADA; (2) that Defendant retaliated against him for engaging in

ADA-protected activity; and, (3) that Defendant unlawfully terminated Plaintiff's employment

due to his disability in violation of the VHRA.

### 1.  Exhaustion of Administrative Remedies

In his Original Complaint, Plaintiff alleges that he exhausted his remedies with the Equal

Employment Opportunity Commission ("EEOC").  (*Id.*)  On August 14, 2014, the EEOC made a

determination that Defendant had not violated the ADA.  (Compl. Ex. 1, ECF No. 3-1.)

Accordingly, the EEOC issued Plaintiff a Right to Sue Letter ("RTS Letter"), dated August 14,

---

[1] Proceeding *pro se*, Plaintiff has not strictly complied with the formatting requirements of the Local Rules; nonetheless, "[a] document filed *pro se* is 'to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation and internal quotation marks omitted).  Further, "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e).  "Principles requiring generous construction of *pro se* complaints are not, however, without limits . . . . It does not require [district] courts to conjure up questions never squarely present to them.  District judges are not mind readers." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

[2] Plaintiff's filings contain numerous grammatical errors.  The Court will attempt to correct the errors, where obvious corrections can be made without affecting the substance of Plaintiff's allegations.

3

2014. (*Id.*) In his Original Complaint, Plaintiff did not allege when he actually received his RTS

Letter.

### 2. Plaintiff's Medical Condition and Medical Leave

From August 2010 to August 2012, Plaintiff worked for Defendant as a Physical Security

Specialist. (Compl. at 1.) Plaintiff alleges that "[a]t all times, [he] walked with a noticeable limp

due to [his] disability."[3] (*Id.*) During the course of his employment, Plaintiff "was out of work

due to a medical condition from July 2011 to November 2011." (*Id.*) After returning to work,

Plaintiff "advised [his] supervisor that [he] would need an additional four months of leave in

2012 due to an expected surgery related to [his] medical condition." (*Id.*) "In or around May

2012, [Plaintiff] requested a leave of absence for a surgery as a reasonable accommodation."

(*Id.*) Plaintiff's surgery was originally scheduled for July 9, 2012. (*Id.* at 1, 4.) Plaintiff's

surgery was for his knees. (*See* Compl. Ex. 13, ECF. No. 3-14.) When Plaintiff requested his

leave, Defendant's human resources office approved the request. (Compl. at 1.) Later,

Plaintiff's surgery, originally "scheduled for July 2012[,] was canceled due to a medical

complication," specifically, "a heart condition." (*Id.* at 1, 4.)

On August 17, 2012, shortly before his discharge, Plaintiff alleges that "Melissa Mason,

Regional Sup, and Jim Turner, Regional Coord, met with [him] in [his] office[, and that t]hey

asked [him] about the status of [his] need for surgery." (*Id.* at 2.)

### 3. Termination of Plaintiff's Employment

On August 31, 2012, Defendant terminated Plaintiff's employment, alleging that Plaintiff

had falsified a timesheet on July 26, 2012. (Compl. Ex. 6, ECF No. 3-6.) Plaintiff alleges that

he never falsified the timesheet. (Compl. at 2.) Plaintiff further alleges that the timesheet

---

[3] In his Original Complaint, Plaintiff never presents any specific factual allegations as to what his disability was.
Rather, Plaintiff only vaguely references "a medical condition from July 2011 to November 2011," "a noticeable
limp" and "medical issues." (Compl. at 1-2.)

incident was a pretextual reason used by Defendant to discredit Plaintiff and subsequently to terminate his employment. (Compl. at 3.) Plaintiff further alleges that his termination was actually motivated by Defendant's "concern[] with [his] past and future medical leave." (*Id.*)

In support of Plaintiff's allegations of pretext, Plaintiff provides several affidavits from coworkers (Compl. Exs. 2, 5(c), 15, 16, ECF Nos. 3-2, 3-6, 3-15, 3-16), two signed and notarized statements (Compl. Exs. 5(a), 5(b), ECF Nos. 3-5, 3-6), and one signed statement (Compl. Ex. 4, ECF No. 3-4.) These documents, several of which are illegible, collectively contain numerous statements that support an inference that Plaintiff's supervisor, Ms. McGuigan, fabricated the timesheet incident to justify terminating Plaintiff's employment. (*See also* Compl. at 2.) However, these documents do not contain allegations or statements that otherwise support an inference that Plaintiff was disabled or that Defendant discriminated against him due to his alleged disability. The Court, therefore, does not discuss these documents in great detail as they are largely irrelevant to ruling on Defendant's Motion to Dismiss.[4]

In further support of his argument that the timesheet incident was a mere pretext for his termination, Plaintiff offers employee evaluations that allegedly demonstrate that Defendant was "clearly satisfied with [his] performance." (Compl. at 3; *see* Compl. Ex. 15, ECF No. 3-15 at 1-6.) One evaluation, dated August 8, 2011, is typed and shows Plaintiff with an evaluation score of 129/135; however, this evaluation is unsigned by either Plaintiff or his supervisor, Ms.

---

[4] These documents are relevant to the familiar burden shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework after a plaintiff makes a *prima facie* case of discrimination, the burden shifts to the defendant to prove a non-discriminatory reason for plaintiff's termination. *See Jacobs v. N.C. Admin. Office of the Courts*, ___ F.3d ___, ___, 2015 WL 1062673, at *7, *11 (applying the *McDonnell Douglas* framework to ADA wrongful termination and retaliation claims). If the defendant satisfies his burden, the burden then shifts back to the plaintiff to prove that the defendant's reason for termination was a mere pretext. *Id.* at *11. On a motion to dismiss, however, the burden shifting analysis is not implicated as a plaintiff can survive a motion to dismiss if he merely presents "allegations sufficient to reasonably infer a *prima facie* case of discrimination" under the *McDonnell Douglas* framework. *Petrosyan v. Delfin Group U.S.A., LLC*, 2015 WL 685266, at *6 (D.S.C. Feb. 18, 2015). In the instant case, Plaintiff's exhibits are relevant to proving that Defendant's rationale for discharging Plaintiff was a mere pretext. However, as Plaintiff need only plead a reasonable inference for a *prima facie* case of discrimination, the burden shifting analysis is unnecessary and the Court need not extensively discuss the exhibits that are relevant only to proving pretext.

McGuigan. (Compl. Ex. 15, ECF No. 3-15 at 1-3.) The other evaluation, dated January 26, 2011, is handwritten and shows Plaintiff with an evaluation score of 97/135; this evaluation is signed by both Plaintiff and Ms. McGuigan. (*Id.* at 4-6.)

### 4. Cancellation of Plaintiff's Medical and Dental Insurance

In his Original Complaint, Plaintiff alleges that Defendant cancelled his employee-benefit dental and medical insurance plans, without his knowledge, approximately one month before the termination of his employment. (Compl. at 2-3.) Plaintiff has attached a document from his medical insurance provider indicating that his medical insurance coverage ended on August 1, 2012. (Compl. Ex. 7, ECF No. 3-8 at 1.) Plaintiff has also attached a document indicating that his dental insurance coverage ended on July 31, 2012, before resuming on September 1, 2012. (*Id.* at 2.)

## B. Facts Alleged in Plaintiff's Request to Amend Supplement

Construing Plaintiff's Request to Amend as a motion to file an amended complaint, and finding that Plaintiff has a right under the Federal Rules of Civil Procedure to amend his Original Complaint,[5] the Court will consider any claims and allegations in Plaintiff's Request to Amend, in addition to those in Plaintiff's Original Complaint.

---

[5] On January 12, 2015, Defendant filed a timely Motion to Dismiss (ECF No. 6), directed towards Plaintiff's Original Complaint (ECF No. 3). Thereafter, on January 26, 2015, Plaintiff filed his Request to Amend Supplement (ECF No. 12). Federal Rule of Civil Procedure 15(a) allows a plaintiff to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B). As Plaintiff filed his Request to Amend Supplement 14 days after the filing of Defendant's Motion to Dismiss, Plaintiff had a right under the rules to amend his Original Complaint without leave of the Court. However, as Plaintiff's filing was docketed as a motion, the Court accordingly RECOMMENDS that Plaintiff's Request to Amend Supplement (ECF No. 12) be GRANTED.

The Court notes that Defendant has presented a persuasive argument that Plaintiff's Request to Amend Supplement should be denied under the doctrine of futility of amendment. (Def. Homeland Sec. Solutions, Inc.'s Br. In Opp'n to Pl.'s Mot. for Leave to Amend or, in the Alternative, HSSI's Br. in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Br. in Supp. MTD Am. Compl."), ECF No. 20 at 2-5.) Generally, within the Fourth Circuit, "[t]he plaintiff's right to amend once is absolute," and is not precluded by the doctrine of futility. *Galustan v. Peter*, 591 F.3d 724, 730 (2012). However, where a party is proceeding *in forma pauperis*, the Court may "prescreen" and "block futile claims." *Rutledge v. Town of Chatham*, No. 4:10CV00035, 2010 WL 4791840, at *6-7 (W.D. Va. Nov.

Plaintiff begins his Request to Amend by asking the Court to remove his VHRA claim from his Original Complaint. (Pl.'s Request to Amend at 1.)[6] Examining the Request to Amend further, the Court finds that Plaintiff's only factual allegation is Plaintiff's statement that "[w]ith plaintiff[']s Exhibit 1 a, b attached (showing a company paid health and dental plan cancelled months before [Plaintiff's] dismissal and company aware of upcoming surgeries)." (*Id.* at 2.) In support of this allegation, Plaintiff attaches medical and dental insurance documents—the same as those attached to his Original Complaint—that indicate that his coverage was cancelled prior to his discharge. (*See* Pl.'s Request to Amend Exs. 1(a), 1(b), ECF Nos. 12-1, 12-2; *see also* (Compl. Ex. 7, ECF No. 3-8 at 1-2.) Despite the lack of new factual allegations, Plaintiff does officially add a claim under "Section 510 of ERISA, 29 U.S.C. § 1140." (Pl.'s Request to Amend at 2.) The balance of Plaintiff's Request to Amend is made up of legal argument that adds no new factual allegations in support of Plaintiff's claims.

---

18, 2010) ("Where *in forma pauperis* status is granted, the Court may **at any time** pre-screen and dismiss allegations that are frivolous or where the plaintiff fails to state a claim"), *aff'd*, 414 F. App'x 568 (4th Cir. 2011); *see United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) ("Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied."); *see also, e.g., United States v. Ellis*, No. 3:10CR228, 2014 WL 6712748, at *7 (E.D. Va. Nov. 26, 2014); *United States v. Prosise*, No. 3:07CR322-HEH, 2014 WL 2921926, at *10 (E.D. Va. June 27, 2014), *appeal dismissed*, 589 F. App'x 82 (4th Cir. 2014); *Ingram v. Buckingham Corr. Ctr.*, No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va. May 5, 2011). In the instant case, the Court need not explicitly rule on the futility issue as the end result under either denying or granting Plaintiff's Request to amend is the same; that is, Plaintiff's ERISA claims must be dismissed as untimely. Therefore, as there is no prejudice to Defendant in allowing Plaintiff to amend his Original Complaint, the Court RECOMMENDS that Plaintiff's Request to Amend Supplement be GRANTED.

[6] Defendant has not objected to the amendment dropping the VHRA claim; indeed, Defendant originally sought to have the VHRA claim dismissed. (*See* Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem. Supp."), ECF No. 7 at 7-10.) Accordingly, the Court finds that "Plaintiff's Request to Amend Supplement" operates to drop Plaintiff's VHRA claim. Even had Plaintiff not sought to voluntarily dismiss his VHRA claim, the Court finds that it lacks jurisdiction over the claim as the VHRA does not create a cause of action for disability discrimination. *See* Va. Code. Ann. § 2.2-3903(B); *Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 512 (E.D. Va. 2007) ("The VHRA does not create an independent cause of action to redress discrimination on the basis of disability."). Therefore, the Court RECOMMENDS that Plaintiff's VHRA claim be DISMISSED WITH PREJUDICE.

### C. Facts Alleged in Plaintiff's Response to Defendant's Motion to Dismiss

Plaintiff's Response to Defendant's Motion to Dismiss contains numerous exhibits and factual allegations found neither in Plaintiff's Original Complaint nor in Plaintiff's Request to Amend.

Specifically, Plaintiff alleges further details regarding his medical condition. (*See* Resp. to Def.'s Mot. to Dismiss ("Pl.'s First Resp. Br."), ECF No. 11 at 3; Pl.'s First Resp. Br. Exs. 5(a), 5(d), ECF Nos. 11-7, 11-10.) Plaintiff also alleges, for the first time, that he actually received his RTS Letter on August 20, 2014. (Pl.'s First Resp. Br. at 2.) Plaintiff attached to his First Response Brief several Mail Tracking Records ("Tracking Records") that indicate that items mailed from Plaintiff's home in Mechanicsville, Virginia take more than three days to reach the EEOC Office in Washington, D.C. (Pl.'s First Resp. Br. Exs. 1-3, ECF Nos. 11-1, 11-2, 11-3; *see also* Pl.'s First Resp. Br. at 2-3.)

In light of these new allegations, the Court notes that

> Plaintiff cannot assert new claims by raising them in h[is] brief in opposition to the Defendant's motion to dismiss. " '[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.' "

*Marsh v. Virginia Dept. of Transp.*, No. 6:14-CV-00006, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014) (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir.1989) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984))); *Shapiro v. Regent Univ.*, No. 2:09cv605, 2010 U.S. Dist. LEXIS 53172, at *6 n.3 (E.D. Va. May 26, 2010) (citing *Morgan Distrib. Co., Inc.*, 868 F.2d at 995) (granting the defendant's motion to dismiss and noting that "[p]laintiff is not permitted to assert new claims by raising them in his brief in opposition to the [d]efendant's motion."); *cf. Barclay White Skanska, Inc. v. Battelle*

*Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (citing *Car Carriers, Inc.*, 745 F.2d at 1107) (recognizing that a plaintiff cannot amend his complaint by a brief in opposition to a motion for summary judgment).

Plaintiff seemingly made these new allegations and provided this documentation to counter Defendant's Motion to Dismiss in an attempt to support not only the merits of his disability discrimination claim, but also the allegation that he timely filed his Original Complaint. However, none of these new allegations are found in either the Original Complaint or Plaintiff's Request to Amend. The Court, therefore, cannot consider any of these allegations or this documentation in resolving Defendant's Motion to Dismiss and Motion to Dismiss Plaintiff's Amended Complaint.

This result may seem harsh; however, the Court hastens to note that Plaintiff also filed what was essentially an amended complaint on the same day as his First Response Brief.[7] Plaintiff clearly had enough acumen to know that the Rules of Civil Procedure allow for the filing of amended complaints. Nonetheless, Plaintiff chose to separate the argument and allegations in his First Response Brief from the new claims and allegations raised in his Request to Amend. While *pro se* litigants are held to "less stringent standards," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it is not the responsibility of the Court to reorganize and edit Plaintiff's

---

[7] The Court notes that Plaintiff's Request to Amend is not actually an amended complaint, nor does it include an amended complaint as an attachment. Rather, the Request essentially asks the Court to change portions of the Original Complaint based on new claims and allegations raised in the Request.

The Court recognizes that in general practice a plaintiff is required to tender a proposed amended complaint to a motion to amend. *See Williams v. Wilkerson*, 90 F.R.D. 168, 169-70 (E.D. Va. Apr. 30, 1981). In *Williams,* the Court noted that judicial economy would suffer and remarked that "[i]f a copy of the proposed amended complaint is not submitted with the motion for leave to amend, the Court and opposing counsel is required to thumb through the file to search out the relevant portions of the original complaint." *Id.* The Court notes that in the instant case Defendant has essentially treated Plaintiff's Request to Amend as an amended complaint. (*See* Def. Homeland Sec. Solutions, Inc.'s Mot. to Dismiss Pl.'s Am. Compl., ECF No. 18.) Moreover, Plaintiff's Request is so succinct as to not burden the Court in reaching its decision. Accordingly, finding no prejudice to Defendant or burden to judicial economy, the Court—without overruling the decision in *Williams*—will consider Plaintiff's Request to Amend as an amended complaint.

filings by conjecture or assumption while attempting to infer Plaintiff's intentions, nor would it be appropriate to do so. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that, when analyzing *pro se* documents, a district court need not transform itself from "its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.")  Furthermore, as discussed below, even if the Court were to consider the new allegations raised in Plaintiff's First Response Brief, they still would not operate to establish that Plaintiff actually received his RTS Letter on August 20, 2014.

Ultimately, the Court will not consider the additional allegations in Plaintiff's First Response Brief as "[t]o hold otherwise would mean that a party could unilaterally amend a complaint at will . . . by raising a point in a brief." *Marsh*, 2014 WL 6833927, at \*8.

## II. PROCEDURAL POSTURE

On February 19, 2013, Plaintiff filed a Charge of Discrimination with the EEOC. (Compl. Ex. 9, ECF No. 3-10.)  Thereafter, on June 30, 2014, the EEOC notified Plaintiff that its investigation revealed "no causal link between [Defendant's] adverse action and [Plaintiff's] disability."[8] (Compl. Ex. 10, ECF No. 3-11 at 1.)  Accordingly, the EEOC dismissed Plaintiff's claim. (*Id.*) On August 14, 2014, the EEOC issued Plaintiff the RTS Letter, which informed him of his right to file a civil action against Defendant in federal court within 90 days of his receipt of the RTS Letter. (Compl. Ex. 1, ECF No. 3-1.)  Because the date that Plaintiff received

---

[8] The letter is addressed to "Mr. Jewett;" however, it concerns Plaintiff's EEOC action.  The identity of Mr. Jewett is not disclosed in the pleadings; however, the Court presumes that Mr. Jewett was Plaintiff's former counsel or a non-attorney representative during the administrative process.

the RTS Letter is unknown or in dispute,[9] the Court applies Federal Rule of Civil Procedure 6(d) and considers Plaintiff to have received the RTS Letter on August 18, 2014.[10]

On November 18, 2014, Plaintiff filed a Motion to Proceed *In Forma Pauperis* (Mot. to Proceed *In Forma Pauperis* ("IFP Motion"), ECF No. 1) in this Court.  Attached to the IFP Motion was Plaintiff's proposed Original Complaint (IFP Mot. Ex. 1, ECF No. 1-1).  On December 1, 2014, the Court granted Plaintiff's IFP Motion and accepted Plaintiff's accompanying Original Complaint.  (Order, ECF No. 2.)

Thereafter, on January 12, 2015, Defendant filed a Motion to Dismiss (ECF No. 6).  In the accompanying brief, Defendant argues that Plaintiff's claims under the ADA are untimely and that the VHRA does not create a private cause of action for disability discrimination and does not apply to Defendant, as it employees more than 15 individuals.  (Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem. Supp."), ECF No. 7 at 3.)  On January 26, 2015, Plaintiff filed his Response to Defendant's Motion to Dismiss (Pl.'s First Resp. Br., ECF No. 11).

Also on January 26, 2015, Plaintiff filed a document styled "Plaintiff[']s Request to Amend Supplement" (Pl.'s Request to Amend, ECF No. 12).[11]  In the Request to Amend, Plaintiff asks that the Court "remove complaint of violation under VHRA, with the ADA . . . remaining." (Pl.'s Request to Amend at 1.)  Plaintiff further "ask[s the] [C]ourt to modify [Plaintiff's] complaint/suit filed on Nov 18, 2014 with defendant[']s response to suit and

---

[9] *See infra* Section IV(B)(1).

[10] Federal Rule of Civil Procedure 6(d) establishes a three-day mailing presumption. *See, e.g., Nguyen v. INOVA Alexandria Hosp.*, 187 F.3d 630, at *3 (4th Cir. 1999) (citation omitted) (applying the 3-day mailing assumption to a Title VII, *pro se* Plaintiff).  However, applying the presumption to the RTS Letter yields a presumed delivery date of August 17, 2014, which was a Sunday.  Accordingly, the Court looks forward to the next business day, August 18, 2014, and considers that to be the date on which Plaintiff received the RTS Letter. *See* Fed. R. Civ. P. 6(a)(1)(C) (stating that when the last day of a period calculated under the Rules falls on a Sunday, "the period continues to run until the end of the next [business day].").

[11] As discussed above, the Court construes Plaintiff's Request to Amend Supplement as being a motion for leave to file an amended complaint. *See supra* notes 5 & 7 and accompanying text.

'Request to Dismiss['] received on Jan[uary] 16, 2015. Plaintiff request the addition violation under ERISA Section 510 of ERISA, 29 U.S.C. §1140." (*Id.* at 2.)

On February 6, 2015, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint (Def. Homeland Sec. Solutions, Inc.'s Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Mot. to Dismiss Am. Compl."), ECF No. 18). In the accompanying brief, Defendant argues that all of Plaintiff's remaining claims are untimely. (Def. Homeland Sec. Solutions, Inc.'s Br. In Opp'n to Pl.'s Mot. for Leave to Amend or, in the Alternative, HSSI's Br. in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Br. in Supp. MTD Am. Compl."), ECF No. 20 at 5-10.)[12]

On February 12, 2015, Plaintiff filed his response to Defendant's Motion to Dismiss the Amended Complaint (Pl.'s Resp. to Defense Mot. to Dismiss Pl.'s Amendment of Complaint ("Pl.'s Second Resp. Br."), ECF No. 26). In his Second Response, Plaintiff argues that the Court should toll the statutes of limitations as to his claims and consider them as timely filed. (Pl.'s Second Resp. Br. at 3-6.) On February 16, 2015, Defendant filed a Reply Brief in support of its Motion to Dismiss Plaintiff's Amended Complaint (Def. Homeland Sec. Solutions, Inc.'s Reply Br. in Supp. of its Mot. to Dismiss Pl.'s Am. Compl. ("Def.'s Reply"), ECF No. 27).

On February 25, 2015, Plaintiff filed a document styled "Plaintiffs [sic] Response to Defendents [sic] Reply Breif [sic] in Support of its Motion to Dismiss: Dated Feb 16, 2015 and Conclusion to Purtanant [sic] Facts of Case" (Pl.'s Resp. to Def.'s Reply ("Pl.'s Third Resp. Br."), ECF No. 28). Thereafter, also on February 25, 2015, Defendant moved to strike Plaintiff's Third Response Brief as a sur-reply disallowed by Local Civil Rule 7. (Def. Homeland Sec. Solutions, Inc.'s Mot. to Strike Pl.'s 'Resp. to Def.'s Reply Br. in Supp. of its Mot. to Dismiss'

---

[12] Defendant's Brief was docketed twice: once as the brief in support of its Motion to Dismiss Plaintiff's Amended Complaint and again as a Memorandum in Opposition to Plaintiff's Motion for Leave to File an Amended Complaint. (*See* ECF Nos. 19, 20.)

("Def.'s Mot. to Strike"), ECF No. 29.)  Plaintiff never sought leave to file his Third Response Brief.

The matter is now before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendant's Motion to Dismiss (ECF No. 6), Plaintiff's Request to Amend Supplement (ECF No. 12), Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18), and Defendant's Motion to Strike "Plaintiff's Response to Defendant's Reply Brief in Support of its Motion to Dismiss: Dated Feb 16, 2015 and Conclusion to Purtanant [sic] Facts of Case" (ECF No. 29).

## III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted).  In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004)

(citation omitted).  Legal conclusions enjoy no such deference.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ANALYSIS

Plaintiff effectively filed his Original Complaint on August 18, 2014, when he submitted it as an attachment to his IFP Motion.  In his Original Complaint, Plaintiff brings the following claims: (1) that Defendant unlawfully terminated Plaintiff's employment due to his disability in violation of the ADA, (2) that Defendant retaliated against him for engaging in ADA-protected activity, and (3) that Defendant unlawfully terminated Plaintiff's employment due to his disability in violation of the VHRA.  (Compl. at 1.)

Thereafter, on January 26, 2015, Plaintiff effectively amended his Original Complaint by adding the claim that Defendant unlawfully canceled Plaintiff's health and dental insurance benefits prior to his termination, in violation of ERISA.  (Pl.'s Request to Amend at 2.)  Plaintiff also dropped his VHRA claim.  (*Id.* at 1.)

Therefore, the following claims are before the Court: (1) that Defendant unlawfully terminated Plaintiff's employment due to his disability in violation of the ADA; (2) that Defendant retaliated against him for engaging in ADA-protected activity (collectively "ADA Claims"); and, (3) that Defendant unlawfully canceled Plaintiff's health insurance benefits prior to his termination in violation of ERISA § 510 ("ERISA Claim").

For the reasons discussed below, the Court finds that all of Plaintiff's claims are untimely and that equitable tolling is not appropriate in this case.  Furthermore, assuming for the sake of argument that Plaintiff's ADA Claims were timely, the Court would find that Plaintiff failed to allege sufficient facts to overcome a motion to dismiss.

## A. Defendant's Motion to Strike

The Court concludes that Defendant's Motion to Strike should be granted. The Court notes that Local Civil Rule 7 specifically states that, beyond the brief in support of a motion, the response brief, and the reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of Court." Local Civ. R. 7(F)(1). Plaintiff filed his Third Response Brief, which Defendant seeks to strike, after Defendant filed its Reply in Support of its Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff did not request leave to file his Third Response Brief, and the Court did not grant Plaintiff leave to file his Third Response Brief.

Therefore, the Court RECOMMENDS that Defendant's Motion to Strike (ECF No. 29) be GRANTED. Accordingly, the Court will not consider Plaintiff's Third Response Brief in analyzing the following issues.

## B. Untimeliness

Having analyzed the papers, and drawing all reasonable inferences in favor of Plaintiff—while still adhering to the United States Code, the precedent of this Court, and the Federal Rules of Civil Procedure—the Court finds that all of Plaintiff's claims are procedurally barred as untimely and that the facts alleged do not establish a basis for equitable tolling. Specifically, Plaintiff's ADA Claims are barred as being filed beyond the 90-day limitations period set by Congress. 42 U.S.C. §2000e-5(f)(1); *see, e.g.*, *Beale v. Burlington Coat Factory*, 36 F. Supp. 2d 702, 703-04 (E.D. Va. 1999) (recognizing that "the Fourth Circuit explicitly rejected the 'actual receipt' rule to determine date of receipt" and therefore the date on which the 90-day limitations period begins). Additionally, Plaintiff's ERISA Claim is barred as being filed beyond a two-year limitations period—adopted from the Code of Virginia—that this Court has applied to such

claims. *See, e.g., Sutter v. First Union Nat'l Bank of Va., Inc.*, 932 F. Supp. 753, 757 (E.D. Va. 1996) (applying the wrongful discharge limitations period found in Va. Code Ann. § 8.01-248).

### 1. Untimeliness of Plaintiff's ADA Claims

Plaintiff has raised two distinct claims under the ADA: (1) wrongful discharge and (2) retaliation. (*See* Compl. at 1.) Plaintiff raised both of these claims at the administrative level. (*See* Compl. Ex. 9, ECF No. 3-10 at 1.) Following the issuance of the RTS Letter, Plaintiff brought these claims in this Court. However, having considered the posture of this case, the Court concludes that Plaintiff's ADA Claims should be dismissed as untimely.

### i. Plaintiff's Constructive Receipt Date

Following pursuit of an ADA claim at the administrative level, if the EEOC dismisses the claim, it "shall notify the [plaintiff] and within ninety days after the giving of such notice a civil action may be brought . . . by the [plaintiff]." 42 U.S.C. §2000e-5(f)(1); *see also Blackwell v. Gen. Dynamics Land Sys., Inc.*, No. 1:10cv110 (JCC/JFA), 2010 WL 2639829, at *4 (E.D. Va. June 28, 2010) ("It is well established that an aggrieved employee's right to sue will be lost if he or she fails to file his or her Title VII suit within ninety (90) days following receipt of a right-to-sue letter . . . ."). "The 90-day filing requirement applicable to claims under Title VII and the ADA is 'strictly construed.'" *Pennington v. Gen. Dynamics Armament and Technical Prods., Inc.*, No. 1:12CV00063, 2013 WL 3356119, at *2 (W.D. Va. July 3, 2013) (citation omitted).

In analyzing employment discrimination claims for timeliness, the Fourth Circuit has explicitly "rejected an 'actual receipt' rule." *Nguyen v. INOVA Alexandria Hosp.*, 187 F.3d 630, at *3 (4th Cir. 1999) (quoting *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir. 1987)). The Fourth Circuit has reasoned "first, that requiring 'actual receipt' to trigger the [limitations] period would allow some plaintiffs 'open-ended time extension, subject to

16

manipulation at will,' and, second, that any injustices created by the rule could be remedied by equitable tolling." *Watts-Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) (quoting *Harvey*, 813 F.2d at 654).

"Of course, if the actual date of receipt is *confirmed by evidence*, that date governs." *Nguyen*, 187 F.3d at *3 (emphasis added). Where, however, there is no evidence confirming the date of receipt, "it is presumed that service by regular mail is received within three days pursuant to Rule 6(e) of the Federal Rules [of Civil Procedure]." *Id.* (citing Old Fed. R. Civ. P. 6(e);[13] *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984)). Specifically, "[w]hen the date on which a potential plaintiff received actual notice of right-to-sue is disputed or unknown . . . Rule 6(e) creates the presumption that notice was received three days after it was mailed." *Blackwell*, 2010 WL 2639829, at *4 (citing *Beale*, 36 F. Supp. 2d at 704; *see Pledger v. Fairfax Cnty.*, 3:13-CV-740-JAG, 2014 WL 2040068, *1 (E.D. Va. May 16, 2014) (citing *Beale*, 36 F. Supp. 2d 702, 704) ("Because [plaintiff] does not provide the Court with a firm date of receipt, the Court will apply Federal Rule of Civil Procedure 6(d)'s catch-all rule of computation to 'conclude that the right-to-sue letter arrived at [the plaintiff's] home three days after it was mailed.'"), *aff'd*, 585 F. App'x 156 (4th Cir. 2014); *Pennington*, 2013 WL 3356119, at *2 (citing *Nguyen*, 187 F.3d at *3) ("If the date of receipt is unknown or in dispute, it is presumed that the letter was received within three days after it was mailed by the EEOC."); *Asbury v. City of Roanoke*, 599 F. Supp. 2d 712, 717-19 (W.D. Va. Feb. 25, 2009) (applying the Rule 6(d) three day presumption for a Title VII case on a Motion for Summary Judgment, despite the fact that plaintiff presented a declaration regarding the date on which she purported to actually receive the right-to-sue letter); *Roberts v. Genesis Healthcare Corp.*, No. WDQ-06-2305, 2007 WL

---

[13] While not explicitly stated in the comments, in 2007 Rule 6(e) was apparently either consolidated or renumbered to Rule 6(d) as part of the general restyling of the Civil Rules. *See* Fed. R. Civ. P. 6 advisory committee's note 2007.

5681609, at *3-4 (D. Md. Apr. 23, 2007) ("When the date of receipt is unknown or in dispute,

the court presumes that service by regular mail is received within three days under Rule 6(e).");

*see also Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010)

("[Plaintiff's] unsupported allegation that she received her EEOC right-to-sue letter . . . was not

sufficient to rebut the applicable three-day presumption of receipt."); *cf. Schmidt v. Town of*

*Cheverly, Maryland*, No. GJH-13-3282, 2014 WL 4799039, at *9-10 (D. Md. Sept. 23, 2014)

(noting that a sworn affidavit is sufficient to overcome the 3-day delivery presumption).

In the instant case, Plaintiff's RTS Letter is dated August 14, 2014.  In both his Original

Complaint and his Request to Amend, Plaintiff fails to allege when he actually received the RTS

Letter.  Moreover, Plaintiff fails to present any substantive evidence to rebut the presumption

that he received the RTS Letter within three days of its mailing.  Accordingly, the Court will

apply Rule 6's 3-day delivery presumption and consider Plaintiff to have received his RTS Letter

on August 18, 2014.[14]  Therefore, Plaintiff's 90-day filing deadline ended on November 16,

2014; however, because that day was a Sunday, Plaintiff had until the end of November 17,

2014, to file this action in a timely fashion.  *See* Fed. R. Civ. P. 6(a)(1)(C).  Plaintiff did not file

his IFP Motion, which included his proposed Original Complaint, with the Court until November

18, 2014.

Because the 90-day filing deadline is "strictly construed," the Court finds that Plaintiff's

Original Complaint was untimely filed and, therefore, that Plaintiff is procedurally barred from

proceeding with his ADA Claims.  *Asbury*, 599 F. Supp. 2d 712, 716 ("If a plaintiff does not file

suit within the ninety day period, she will forfeit her right to pursue the claim. . . . This timing

requirement is strictly construed.") (citations omitted); *see also Harvey*, 813 F.2d at 653-54

---

[14] August 17, 2014, was a Sunday; therefore, the Court presumes that delivery occurred on August 18, 2014. *See supra* note 10.

(affirming the dismissal of a Title VII suit filed 1 day after the expiration of the 90-day filing

period); *Pennington*, 2013 WL 3356119, at *2 (citation omitted) ("The 90-day filing requirement

applicable to claims under Title VII and the ADA is 'strictly construed.'"); *Pledger*, 2014 WL

2040068, at *2 (granting employer's motion to dismiss where plaintiff filed her complaint four

days after the 90-day limitations period had expired).

### ii. Plaintiff's Alleged Receipt Date

Plaintiff argues at some length that the Court should consider his alleged actual receipt

date of August 20, 2014, as the starting point for calculating the 90-day filing deadline.  The

Court first notes that August 20, 2014, is exactly 90-days prior to November 18, 2014—the date

on which Plaintiff's Motion to Proceed *In Forma Pauperis* was filed in this Court, along with his

proposed Original Complaint.  The Court also notes that Plaintiff has not substantiated this self-

serving allegation with a sworn affidavit, registered mail receipt, the RTS Letter's envelope, or

other evidence. *See Nguyen*, 187 F.3d at *3 n.3 ("By not submitting the [right-to-sue letter's]

envelope as evidence, [plaintiff] has placed the issue of notice in dispute."); *cf. Schmidt*, 2014

WL 4799039, at *9-10 ("[A] party can also rebut the [3-day] presumption by presenting

evidence that it took longer than three days to reach the party. . . . [P]laintiffs' sworn affidavits . .

. were sufficient, absent any contrary evidence, to rebut the three-day-presumption.").

First, the Court notes that on a motion to dismiss, the record includes only "the complaint

in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters

of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.  Moreover, "it is axiomatic

that the complaint may not be amended by the briefs in opposition to a motion to dismiss."

*Marsh*, 2014 WL 6833927, at *8 (citation omitted); *see also Shapiro*, 2010 U.S. Dist. LEXIS

53172, at *6 n.3 ("Plaintiff is not permitted to assert new claims by raising them in his brief in

opposition to the [d]efendant's motion."). Because Plaintiff alleges his date of receipt in a brief in opposition to Defendant's Motion to Dismiss, rather than in his Original Complaint or Request to Amend, the Court cannot consider Plaintiff's allegations as to the date of receipt.

Second, even were the Court to generously construe the filings and essentially re-plead Plaintiff's case for him by reorganizing several documents—a task that in any event would be inappropriate—Plaintiff's Tracking Records still do not substantiate or reasonably support his self-serving allegations as to the date of receipt and thereby do not operate to rebut the 3-day presumption. Plaintiff has not alleged how the EEOC mailed the RTS Letter to Plaintiff. Rather, the Court is invited to assume that the EEOC's mailing method is the same, or at the very least substantially similar, to the mailing methods represented in the Tracking Records. The Court is further invited to assume that travel times of the letters mailed by Plaintiff, and thus originating in Mechanicsville, accurately represent the travel times of letters mailed by the EEOC, and thus originating in Washington, D.C.

Plaintiff's many filings indicate that he appreciates the importance of affidavits as opposed to unsworn statements and allegations. The multiple affidavits that Plaintiff has filed clearly demonstrate that Plaintiff is capable of obtaining affidavits and submitting them to the Court. However, despite having made several filings, Plaintiff has not offered a sworn affidavit in which he states the date that he received the RTS Letter. *See Schmidt*, 2014 WL 4799039, at *9-10 (noting that a sworn affidavit will allow a plaintiff to overcome the three-day presumption). Furthermore, Plaintiff is—or was—presumably in possession of the postmarked envelope in which the RTS Letter was mailed. Again, despite several opportunities to do so, Plaintiff has not submitted the postmarked envelope to the Court. Therefore, the date that Plaintiff actually received the RTS Letter is unknown or in dispute. *See Nguyen*, 187 F.3d at *3

n.3 ("By not submitting the envelope as evidence, Nguyen has placed the issue of notice in dispute.").

The Court, therefore, would be required to accept Plaintiff's unsworn, self-serving statement and assume that the Tracking Records accurately represent the mailing time of the RTS Letter, a letter mailed from a different location via an unknown method of mailing. While the Court must liberally construe Plaintiff's filings and draw reasonable inferences in his favor, it is not required to plead Plaintiff's case for him or assume facts where none have been presented.

Ultimately, for the Court to make a finding that Plaintiff actually received the RTS Letter on August 20, 2014, the Court would need to first: (1) impermissibly consider allegations outside of the Original Complaint, as amended by the Request to Amend; or (2) in the alternative, assume that Plaintiff intended for his First Response Brief to function as an amended complaint, despite the fact that Plaintiff filed a separate Request to Amend on the same day that made no mention of the actual receipt date therein; or (3) again in the alternative, improperly allow Plaintiff to amend his Original Complaint through a responsive brief. Second, the Court would then need to: (1) accept Plaintiff's self-serving assertion as to the actual receipt date as true, or (2) find that the Tracking Records—detailing transit from Plaintiff's Mechanicsville, Virginia home to Washington, D.C., via specified mailing methods—accurately represent the transit time of a letter mailed from Washington, D.C. to Plaintiff's home via an unspecified method.

Simply put, to find that Plaintiff received the RTS Letter on August 20, 2014, the Court would need to engage in procedural gymnastics, construing, assuming, and inferring to such an extent that the Court would essentially be acting in the capacity of an advocate for Plaintiff. *See Beaudett*, 775 F.2d at 1278 (noting that, when analyzing *pro se* documents, a district court need

not transform itself from "its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party").

Accordingly, the Court cannot consider the allegation that Plaintiff actually received the Right to Sue Letter on August 20, 2014. Rather, the Court will proceed as multiple district courts and the Fourth Circuit have when the date of receipt is unknown or in dispute and apply the 3-day presumption found in Federal Rule of Civil Procedure 6. Fed. R. Civ. P. 6(d) ("When a party may or must act within a specified time after service . . . made under Rule 5(b)(2)(C) [mailing], 3 days are added after the period would otherwise expire under Rule 6(a)."); *see Nguyen*, 187 F.3d at *3 (citing *Baldwin County*, 466 U.S. at 148); *Pledger*, 2014 WL 2040068, at *1; *Pennington*, 2013 WL 3356119, at * 2; *Blackwell*, 2010 WL 2639829, at *4; *Asbury*, 599 F. Supp. 2d at 717-19; *Roberts*, 2007 WL 5681609, at *4; *Beale*, 36 F. Supp. 2d at 704; *see also Johnson*, 368 F. App'x at 248.

Based on the foregoing analysis, the Court finds that Plaintiff's claims for wrongful termination and retaliation under the ADA were untimely filed. Furthermore, as discussed below, because the Court also finds that equitable tolling is inapplicable to these claims, the Court accordingly RECOMMENDS that Plaintiff's ADA wrongful termination and ADA retaliation claims be DISMISSED WITH PREJUDICE.

### 2. Untimeliness of Plaintiff's ERISA Claim

As the Court finds that Plaintiff had a right to amend his Original Complaint without leave,[15] the Court turns to analyzing Plaintiff's ERISA Claim. The Court concludes that Plaintiff's ERISA Claim should be dismissed as untimely.

Plaintiff explicitly amended his Original Complaint by adding a claim under ERISA § 510, alleging that Defendant illegally terminated Plaintiff's health and dental insurance policies

---

[15] *See supra* note 5.

before even terminating Plaintiff's employment. Plaintiff specifically alleges that his "medical/dental insurance had been canceled Aug 1, 2012, while [Plaintiff was] still employed and without notice or explanation." (Compl. at 2.) Plaintiff alternatively alleges that his "paid health and dental plan[s] [were] cancelled months before [his] dismissal." (Pl.'s Request to Amend at 2.) In support of these allegations, Plaintiff has provided a document from his medical insurance provider indicating that his medical insurance coverage ended on August 1, 2012. (Compl. Ex. 7, ECF No. 3-8 at 1; Pl.'s Request to Amend Ex. 1a, ECF No. 12-1.) Plaintiff has also attached a document indicating that his dental insurance coverage ended on July 31, 2012, before resuming on September 1, 2012. (Compl. Ex. 7, ECF No. 3-8 at 2; Pl.'s Request to Amend Ex. 1b, ECF No. 12-2.) Defendant argues that Plaintiff's "ERISA claim is barred by the applicable statute of limitations." (Def.'s Br. in Supp. MTD Am. Compl. at 5.)

Congress did not explicitly prescribe a statute of limitations for ERISA § 510. In cases such as this, to remedy situations "[w]hen Congress has not established a time limitation for a federal cause of action," the settled practice of the courts "has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir. 1994) (quoting *Wilson v. Garcia*, 471 U.S. 261, 266 (1985)). Thus, "this court must 'borrow the state statute of limitations that applies to the most analogous state-law claim.'" *Lawson v. Altria Retirement Plan for Hourly Employees*, No. 3:12CV460-HEH, 2012 WL 3638570, at *2 (E.D. Va. Aug. 22, 2012) (quoting *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011)).

This Court has ruled that claims brought under ERISA § 510 are most analogous to state-law wrongful termination claims. *See Lawson*, 2012 WL 3638570, at *3; *Sutter*, 932 F. Supp. at 757 ("This court . . . FINDS that Virginia's common law cause of action for wrongful discharge

23

is most analogous to an action under section 510 of ERISA."). Therefore, the Court looks to Virginia law to determine the statute of limitations for wrongful termination claims, and finds that the Code of Virginia sets a two-year statute of limitations for wrongful termination. Va. Code Ann. § 8.01-248; *see Lawson*, 2012 WL 3638570, at *4; *Sutter*, 932 F. Supp. at 757. Accordingly, the Court will apply a two-year statute of limitations to Plaintiff's ERISA Claim.

Claims under ERISA § 510 accrue on the date the plaintiff was terminated. *See Sutter*, 932 F. Supp. at 757 (citing *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir. 1990); *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1267 (8th Cir. 1990)). Plaintiff was terminated on August 31, 2012, (Compl. Ex. 6, ECF No. 3-7); therefore, Plaintiff's ERISA Claim accrued on that day and the two-year statute of limitations began to run. August 31, 2014, was a Sunday; therefore, Plaintiff was required to file his ERISA Claim on or before September 1, 2014, for it to be timely. Assuming that Plaintiff's amended complaint would relate back to his Original Complaint, at the earliest Plaintiff effectively filed his ERISA Claim on November 18, 2014—78 days after the statute of limitations had expired.

Based on the foregoing analysis, the Court finds that Plaintiff's ERISA Claim was untimely filed. Furthermore, as discussed below, because the Court also finds that equitable tolling is inapplicable to claim, the Court accordingly RECOMMENDS that Plaintiff's ERISA Claim be DISMISSED WITH PREJUDICE.

**C. Availability of Equitable Tolling**

The Court begins by noting that Plaintiff's argument regarding equitable tolling is vague in that it does not seem to be directed specifically at either his ADA Claims or his ERISA Claim. Moreover, Plaintiff has largely offered no relevant factual allegations in support of his conclusory statements regarding the availability of equitable tolling.

Plaintiff has argued that

> [a]t the time of the EEOC investigation Plaintiff was under legal
> disability. Therefore the time limit will be tolled until said
> disability is removed. In cases where a cause of action has been
> fraudulently concealed, the statute of limitations is tolled until the
> action is revealed. In this case the EEOC was conducting an
> investigation into serious allegations and violations of rights due
> under ADA, one of those rights being afforded the benefit of
> continued Health/ Dental insurance.

(Pl.'s Second Resp. Br. at 3.)

Plaintiff has also argued that his delay in filing the Original Complaint was due to the

EEOC's failure to produce "records pertaining to [his] case" ("FOIA Records") upon Plaintiff's

Freedom of Information Act request ("FOIA Request"). (Pl.'s First Resp. Br. at 3.) Specifically,

Plaintiff states that—in response to his FOIA Request—the EEOC informed him via a letter that

his "charge file could not be locate[d]." (Pl.'s First Resp. Br. Ex. 4(a), ECF No. 11-4 at 1.)

Plaintiff alleges that he received the letter "with only 30 days remaining to file [his suit in federal

court]. Plaintiff [states that he] only waited to file on the 89[th][16] day with the hopes of the file

arriving before the deadline." (*Id.*) Plaintiff does not specifically link his FOIA Request with an

equitable tolling argument. "District judges are not mind readers," and a liberal reading of *pro se*

documents does not require "courts to conjure up questions never squarely present to them."

*Beaudett*, 775 F.2d at 1278. Nonetheless, in an attempt to construe Plaintiff's arguments "so as

to do justice," Fed. R. Civ. P. 6(e), the Court will consider Plaintiff's FOIA Request argument as

related to the availability of equitable tolling.

The Court finds that Plaintiff is making three distinct arguments: (1) that Plaintiff was

under a legal disability and was, therefore unable to pursue his claims; (2) that during the EEOC

investigation, Defendant fraudulently concealed the facts underlying Plaintiff's ERISA Claim so

---

[16] As discussed above, the Court finds that Plaintiff actually filed his suit outside of the 90-day period, on the 91st day following the presumed receipt of the RTS Letter. *See supra* Section IV(B)(1).

as to prevent him from pursing his rights under ERISA; and, (3) that the EEOC's inability to produce records related to his case rendered him unable to timely file his Original Complaint.

As an initial matter, the Court rejects Plaintiff's argument that he was under any form of "legal disability" that prevented him from pursuing his ERISA Claim in a timely fashion. Plaintiff has not alleged any sort of mental disability or deficiency that would render him incompetent to pursue a legal claim.[17]

Next, the Court considers Plaintiff's other tolling arguments and their applicability to Plaintiff's ADA Claims and ERISA Claim. The Court addresses these claims separately as they are governed by different statutes of limitations and therefore different tolling standards.

### 1. Plaintiff's ADA Claims

"The 90-day filing requirement is 'not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Crabill v. Charlotte Mecklenburg Bd. Of Educ.*, 423 F. App'x 314, 321 (4th Cir. 2011) (quoting *Laber v. Harvey*, 438 F.3d 404, 429 n. 25 (4th Cir. 2006) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) ("[S]tatutory time limits applicable to law suits against private employers under Title VII are subject to equitable tolling."). However, "[i]n the absence of waiver, estoppel, or equitable tolling, a 'lawsuit filed in excess of the 90-day period will be dismissed.'" *Pennington*, 2013 WL 3356119, at *2 (quoting *Panyanouvong v. Vienna Wolftrap Hotel*, 525 F. Supp. 2d 793, 796 (E.D. Va. Nov. 30, 2007)).

Courts grant equitable tolling in two general instances: first, where "plaintiffs [are] prevented from asserting their claims by some kind of wrongful conduct on the part of the

---

[17] Moreover, Defendant stresses that, at the time of his EEOC investigation, Plaintiff was represented by Counsel. The record seems to indicate as such given that the EEOC's original finding of no discrimination in Plaintiff's case is addressed to an individual other than Plaintiff. (Compl. Ex. 10, ECF No. 3-11 at 1.)

defendant;" and second, where "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (citation omitted). However, "[f]ederal courts have typically extended equitable relief only sparingly." *Irwin*, 498 U.S. at 96. Likewise, the Fourth Circuit has stated that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris*, 209 F.3d at 330.

In the instant case, nothing beyond Plaintiff's conclusory allegation suggests any misconduct on the part of Defendant in tricking Plaintiff or otherwise preventing him from asserting his ADA Claims in federal court. *See Irwin*, 498 U.S. at 96. Furthermore, this is not a case wherein Plaintiff "has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *See id.* Rather, by Plaintiff's own admission, he simply waited until—what he mistakenly believed to be—"the 89[th] day" before making any filings in federal court. (Pl.'s First Resp. Br. at 3.) This delay does not justify the application of equitable tolling. *See Gayle v. United Parcel Serv., Inc.* 401 F.3d 222, 227 (4th Cir. 2005) (recognizing that the innocent mistake of misconstruing the filing deadline does not rise to the "'extraordinary circumstance' justifying equitable tolling"); *see also Harris*, 209 F.3d at 331 (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991)) (refusing to apply equitable tolling where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation).

Moreover, the Court can identify no "extraordinary circumstances beyond [P]laintiff['s] control" that made it "impossible" for him to file his Original Complaint, and bring his ADA Claims, in a timely fashion within the 90-day statutory period. *Harris*, 209 F.3d at 330.

Presumably, Plaintiff argues that the EEOC's failure to produce the FOIA Records constituted an extraordinary circumstance. (*See* Pl.'s First Resp. Br. at 3.) However, by Plaintiff's own admission, the EEOC issued a response to Plaintiff's FOIA request on October 15, 2014—33 days before the filing deadline. (*Id.*) The Court can conceive of no reason why, nor has Plaintiff offered any explanation as to how, the EEOC's inability to locate his FOIA Records made it "impossible" for Plaintiff to file suit in a timely fashion, especially given that Plaintiff still had 33 days to file when he was informed that the EEOC was unable to locate the FOIA Records. *Cf. Vogel v. Am. Home Prods. Corp. Severance Pay Plan*, 122 F.3d 1065, *3 n.4 (4th Cir. Sept. 17, 1997) (declining to apply equitable tolling where a plaintiff, represented by counsel, "still had ten days to file suit under the 90-day statut[ory period]"). Moreover, the Court notes that the EEOC is not a party to this case and that no conduct on the part of Defendant affected Plaintiff's FOIA Request. Accordingly, the Court cannot find that the problems related to Plaintiff's FOIA Request, while beyond Plaintiff's control, made it *impossible* for him to file his Original Complaint in a timely fashion.

Finally, the Court notes that "[P]laintiff's *pro se* status provides no independent basis for an equitable tolling of the [ADA] filing period." *Ugbo v. Knowles*, 480 F. Supp. 2d 850, 853 (E.D. Va. Mar. 28, 2007) (citing *Baldwin*, 466 U.S. at 152) (applying the Rule 6, 3-day presumption and declining to equitably toll the deadline for a *pro se* Title VII complaint).

The denial of equitable tolling may seem harsh; however, under these circumstances, the Court cannot allow Plaintiff's "individualized hardship [to] supplant the rules of clearly drafted statutes." *Harris*, 209 F.3d at 330. Accordingly, the Court finds that Plaintiff's ADA Claims are untimely. Therefore, the Court RECOMMENDS that Plaintiff's ADA Claims be DISMISSED WITH PREJUDICE.

### 2. Plaintiff's ERISA Claims

The Court begins by noting that Virginia law governs the availability of equitable tolling

for fraudulent concealment of Plaintiff's ERISA Claim. *See Shofer v. Hack Co.*, 970 F.2d 1316,

1320 (4th Cir. 1992) (citation omitted) (analyzing an ERISA claim and holding that "[i]n

applying the state statute of limitations, the court must also apply state principles of tolling to

that limitation period").

Under Virginia law, only "certain extraordinary circumstances, wherein the positive and

plain requirements of an equitable estoppel preclude" the application of a statute of limitations.

*Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 85 (1980)

(citation omitted). Furthermore, in the instance of alleged fraud, "[t]he character of fraud

necessary to toll the statute must be of a variety involving moral turpitude. A defendant must

intend to conceal the discovery of the cause of action by trick or artifice *and* must have thus

*actually* concealed it from the plaintiff in order for the exception to apply." *Id.* at 86 (citation

omitted) (emphasis added).

Despite Plaintiff's conclusory arguments as to fraudulent concealment, the record before

the Court lends no support to Plaintiff's position. Indeed, Plaintiff's own Original Complaint, as

amended by his Request to Amend, undermines his argument that Defendant both knowingly

intended to, and actually succeeded in, concealing any potential causes of action under ERISA.

Plaintiff attached to his Original Complaint a "Certificate of Prior Health Plan Coverage"

issued by his health insurance provider and dated October 23, 2012. (Compl. Ex. 7, ECF No. 3-8

at 1.) This certificate indicates that Plaintiff's health insurance coverage ended on August 1,

2012. (*Id.*) Additionally, Plaintiff attached a letter from his dental insurance carrier, dated

October 24, 2012. (*Id.* at 2.) This letter indicates that Plaintiff's dental insurance ended on July

31, 2012.[18]  (*Id.*)  These documents show that Plaintiff had actual knowledge of the cancellation

of his insurance policies by October 24, 2012, at the latest.  Therefore, Defendant could not have

actually concealed Plaintiff's potential ERISA claim.

Furthermore, in Plaintiff's Charge of Discrimination—filed with the EEOC on February

19, 2013—Plaintiff alleged that his "medical insurance was cancelled as of August 1, 2012,

without notice or explanation." (Compl. Ex. 9, ECF No. 3-10 at 2.)  Again, Plaintiff's own

exhibit demonstrates that he had actual knowledge of the facts that could give rise to an ERISA

claim well before the expiration of the statute of limitations on August 31, 2014.

Plaintiff attempts to argue that, despite his actual knowledge of his policies' cancellations

as early as October 24, 2012, Defendant nonetheless fraudulently concealed the existence of

Plaintiff's ERISA claim by failing to explicitly address it during the EEOC investigation.  (*See*

Pl.'s Second Resp. Br. at 3-4.)  Plaintiff's argument is misplaced.  First, the EEOC investigation

could not have implicated any potential claims under ERISA.  Indeed, the EEOC does not have

jurisdiction to enforce ERISA; therefore, Plaintiff was in no way barred from bringing an ERISA

claim due to the existence of an ongoing EEOC investigation.[19]  During the investigation,

therefore, Defendant had no responsibility to address the cancellation of Plaintiff's insurance

policies insofar as the cancellations could have been the basis for an ERISA claim.  Moreover,

even assuming that Defendant had a responsibility to address any alleged ERISA violations

during the EEOC investigation, Plaintiff has clearly failed to allege that Defendant acted in any

---

[18] This letter also indicates that Plaintiff either renewed his previous dental insurance policy or otherwise obtained a new dental insurance policy as of September 1, 2012.  (Compl. Ex. 7, ECF No. 3-8 at 2.)

[19] *Cf. Hickey v. Digital Equip. Corp.*, 43 F.3d 941, 945 (4th. Cir. 1995) ("An ERISA claimant generally is required to exhaust the administrative remedies *provided in his or her employee benefit plan* before commencing an ERISA action in federal court." (emphasis added)).

way that constituted an act of "moral turpitude" specifically designed to conceal the facts

underlying Plaintiff's ERISA claim. *See Boykins*, 221 Va. at 86.

Given that Plaintiff has shown nothing to suggest that Defendant intended to, or did in

fact, fraudulently conceal facts related to Plaintiff's ERISA Claim and, further, that Plaintiff had

actual knowledge of the facts underlying such a claim as early as October 24, 2012, the Court

cannot find that equitable tolling is appropriate. Accordingly, the Court finds that Plaintiff's

ERISA claim is untimely. Therefore, the Court RECOMMENDS that Plaintiff's ERISA Claim

be DISMISSED WITH PREJUDICE.

## D. Underlying Merits of Plaintiff's ADA Claims

Assuming *arguendo*, that the Court were to consider Plaintiff as having timely brought

his ADA Claims and were to allow Plaintiff to supplement his Original Complaint, as amended

by the Request to Amend, with the allegations in his First Response Brief, Plaintiff would still

fail to make out a viable claim either for wrongful termination or retaliation under the ADA.[20]

### 1. Wrongful Termination

Under the ADA, "[t]he term 'disability' means, with respect to an individual—(A) a

physical or mental impairment that *substantially limits one or more major life activities* of such

individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment." 42 U.S.C. § 12102(1) (emphasis added). In the instant case, Plaintiff has not

stated under which theory of disability he attempts to pursue an ADA wrongful termination

claim. To find that Plaintiff has alleged a viable claim to survive Defendant's Motion to

Dismiss, therefore, the Court would need to draw inferences from Plaintiff's disjointed

---

[20] While the Court addresses the underlying merits of Plaintiff's ADA Claims for the sake of argument, it does not conduct a similar analysis of Plaintiff's ERISA Claim. Under the analysis above, the Court finds that the facts are clearly insufficient to justify equitably tolling the statutory deadline for Plaintiff's ERISA Claim. *See supra* Section IV(C)(2).

allegations, search through his attachments (which are cited without sufficient explanation or specificity in the Original Complaint), and independently determine under which ADA legal theory of disability Plaintiff intends to (or is able to) proceed. "Even *pro se* plaintiffs must recognize Rule 8's vision for 'a system of simplified pleadings that give notice of the general claim asserted, allow for the preparation of a basic defense, narrow the issues to be litigated, and provide a means for quick dispositions of sham claims.'" *Garris v. Ocwen Loan Servicing, LLC*, No. 1:14cv118 (JCC/JFA), 2014 WL 1385872, at *1 (E.D. Va. Apr. 9, 2014) (quoting *Sewraz v. Guice*, No. 3:08cv35, 2008 WL 3926443, at *1 (E.D.Va. Aug. 26, 2008) (citations omitted)).

Furthermore, it is well established that while a *pro se* plaintiff's pleadings are construed liberally, the Court must not transition from "its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278. "Principles requiring generous construction of *pro se* complaints are not . . . without limits." *Id.* District courts are not required to "conjure up questions never squarely present to them. District judges are not mind readers." *Id.*

Even were the Court to choose for itself a legal theory of disability under which Plaintiff could proceed, Plaintiff has still failed to "allege sufficient facts to indicate that [his] medical condition 'substantially limits' a 'major life activity.'" *Campbell v. Commercial Equip., Inc.*, No. 5:10-CV-003130WW, 2011 WL 3925068, at *6 (E.D.N.C. Sept 7. 2011) (citing 29 C.F.R. § 1630.2) (granting defendant's motion to dismiss plaintiff's ADA claim). Indeed, Plaintiff does not describe his disability with any degree of factual specificity, even under the more generous pleading standard implemented by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 ("ADAAA"). *See Summers v. Altarum Inst. Corp.*, 740 F.3d 325, 329-30 (4th Cir. 2014) (finding that a plaintiff's allegations that he was unable to walk for seven months, and

likely longer, were sufficient under the ADAAA to survive a motion to dismiss).  Plaintiff

merely makes continued passing references to "a medical condition from July 2011 to November

2011," "a noticeable limp," and "medical issues."  (Compl. at 1-2.)

　　　Plaintiff has attached a Functional Capacity Evaluation ("FCE") to his First Response

Brief; however, even that document does not support a finding that Plaintiff is disabled within

the meaning of the ADA at the time of his termination.  (Pl.'s First Resp. Br. Exs. 5(a)-5(d), ECF

Nos. 11-7 to 11-10).  As an initial matter, the Court notes that the FCE was written with regard to

a different job held by Plaintiff with a different employer and is dated February 18, 2009—

approximately18 months before Plaintiff began his job with Defendant and approximately 42

months before Defendant terminated Plaintiff's employment.  Given the age of the FCE, Plaintiff

has failed to allege its relevance, if any, in this case.

　　　Even assuming that Plaintiff's condition remained unchanged since the FCE was written,

Plaintiff has not sufficiently alleged that his capacities are diminished such that he is

substantially limited in a major life activity.  Indeed, the FCE states that Plaintiff "is currently

demonstrating the capacity to perform work with medium physical demand characteristics as

defined by the U.S. Department of Labor."  (Pl.'s First Resp. Br. Ex. 5(c), ECF No. 11-9.)  The

FCE does not indicate that Plaintiff is substantially limited or even moderately limited in any

listed activities.  (*Id.*)  Rather, it indicates that Plaintiff has unlimited capacity for some activities

and simply "reduced tolerance" for others.  (*Id.*)

　　　"Ultimately, [Plaintiff's] evidence simply reveals that he had some medical problems that

caused a minor impact on his capabilities as [a physical security specialist], not an ADA-covered

disability."  *Mobley v. Advance Stores Co., Inc.*, 842 F. Supp. 2d 886, 890 & n.9 (E.D. Va. Jan.

26, 2012) (granting summary judgment in favor of employer).  While the Court must draw

reasonable inferences in favor of Plaintiff, it is not required to show deference to Plaintiff's legal

conclusions that he is disabled within the meaning of the ADA. *See Ashcroft*, 556 U.S. at 678.

### 2. Retaliation

Furthermore, the Court can identify no facts alleged with sufficiency to support a claim

for retaliation. "To establish a prima facie retaliation claim under the ADA, plaintiffs must

allege (1) that they engaged in protected conduct, (2) that they suffered an adverse action, and (3)

that a causal link exists between the protected conduct and the adverse action." *A Soc'y Without*

*A Name*, 655 F.3d at 350-51 (affirming an order granting a motion to dismiss because plaintiff

had failed to allege a *prima facie* case of retaliation under the ADA). In the instant case, Plaintiff

presumably alleges that the retaliatory act was the termination of his employment.

However, Plaintiff has not identified with any particularity what ADA-protected activity

he engaged in that allegedly led to his termination. The alleged protected activity could be

Plaintiff's alleged request for medical leave as an accommodation. However, Plaintiff states in

his Original Complaint that he "requested a leave of absence for a surgery as a reasonable

accommodation, which was granted." (Compl. at 1.) While Plaintiff argues that Defendant

terminated his employment because he requested an accommodation, it does not stand to reason

that Defendant would grant Plaintiff an accommodation only to terminate his employment for the

request.

Finally, Plaintiff has not alleged the existence of a causal link between any alleged

protected activity and his termination, beyond a conclusory assertion. Plaintiff alleges that

Defendant "terminate[d] [him] for utilizing that same accommodation they offered and I

accepted." (*Id.*) Plaintiff contradicts himself, however, as he also states that his surgeries had

been delayed, suggesting that he did not actually utilize the accommodation offered by

Defendant. (*Id.* at 2.) Moreover, in light of the inconsistencies and lack of particularity the Court again notes that it need not show deference to Plaintiff's legal conclusions that he was retaliated against. *See Ashcroft*, 556 U.S. at 678.

Therefore, even assuming *arguendo* that Plaintiff's ADA Claims were timely and assuming that Plaintiff could amend his Original Complaint through his First Response Brief, the Court would still find it appropriate to dismiss Plaintiff's ADA Claims.

## V. CONCLUSION

Based on the foregoing analysis, the Court finds that Plaintiff had a right to amend his Original Complaint, but that Plaintiff's ADA Claims and his ERISA Claim are untimely, having been filed beyond the statutory limitations period. Additionally, the Court finds that equitable tolling is inappropriate under these circumstances. Accordingly, the Court RECOMMENDS that Defendant's Motion to Dismiss (ECF No. 6) be DENIED AS MOOT; Plaintiff's Request to Amend Supplement (ECF No. 12) be GRANTED; Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 18) be GRANTED; and, Defendant's Motion to Strike (ECF No. 29) be GRANTED.

The Clerk is directed to file this Report and Recommendation electronically and send a copy to Robert E. Payne, Senior United States District Court Judge, to all counsel of record, and to *pro se* Plaintiff at his address of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/

Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: May 19, 2015